# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RJ CONTROL
CONSULTANTS, INC.,

        Plaintiff,　　　　　　　　　Case No.

v.　　　　　　　　　　　　　　　　Hon.

MULTIJECT, LLC, RSW
TECHNOLOGIES, LLC, and
JACK ELDER,

        Defendants.

_____/

## COMPLAINT

Plaintiff RJ Control Consultants, Inc. ("RJ Control"), through its attorneys, Frasco Caponigro Wineman & Scheible, PLLC, states for its Complaint against Multiject, LLC ("Multiject"), RSW Technologies, LLC ("RSW"), and Jack Elder ("Elder") (collectively, "Defendants") as follows:

### PARTIES AND JURISDICTION

1. RJ Control is a Michigan corporation with its principal place of business in Rochester Hills, Michigan.

2. Upon information and belief, Multiject is a Michigan limited liability company with its principal place of business in Rochester Hills, Michigan.

3. Jack Elder, an individual, is a citizen of Michigan and, upon information and belief, is the sole member of Multiject.

4. Upon information and belief, Multiject builds and sells industrial machines used for injection molding and provides contract molding production services.

5. Upon information and belief, Elder is the owner of Multiject and is in direct control of its business activities and operations and was personally involved in the decision to provide RJ Control's copyrighted information to a third-party for the purpose of having a third-party improperly use RJ Control's drawings and software in order to obtain a lower contract price for the manufacture and installation of the control system in turntables produced by Multiject.

6. Upon information and belief, RSW is an Ohio limited liability company with its principal place of business in Rossford, Ohio.  In addition, RSW, without RJ Control's permission or consent, used RJ Control's copyrighted materials to manufacture and install control systems for at least one of its customers, Multiject.

7. This is an action for copyright infringement under the copyright laws of the United States, Title 17 of the United States Code and other various claims as set forth herein.  Jurisdiction is conferred by 28 U.S.C. §1331, 1338(a), and 1367(a).

8. Venue is proper in accordance with 28 U.S.C. §1391(b)(1), (2) and 1400(a).

## GENERAL ALLEGATIONS

9. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

### *RJ Controls Develops the Control System*

10. Since the late 1970s, RJ Controls has provided its customers with industrial automation design, installation, and maintenance services.

11. Starting in 2005, RJ Controls designed and developed industrial control systems ("Control System") for use in injection molding turntables.

12. More specifically, RJ Controls built the electrical Control System and designed the software used to precisely move and position the injection molding turntables.

13. After initially designing the Control System, RJ Controls updated the Control System creating modified designs for the Control System. More specifically, in 2013 RJ Controls created "Design 2" for the Control System. Later that same year as the result of the inability to obtain certain components for the Control System, RJ Controls created "Design 3" for the Control System.

14. RJ Controls complied with the Copyright Act and all other laws governing copyrights with respect to applying for and obtaining copyrights for the Control System.

15. RJ Controls has properly registered and owns or controls the copyrights and/or exclusive rights under copyright to the Control System. RJ Controls received its copyright for Design 3 of the Control System ("Copyright Information"). *See* Certificates of Registration, attached as **Exhibit 1**.

*Multiject Orders Control Systems*

16. Multiject designs and builds the physical turntables used for injection molds ("Turntables").

17. However, Multiject does not design or build the Control System that is used to make the Turntables functional (i.e., move). Multiject asked RJ Controls to manufacture the Control System for Multiject's Turntables.

18. RJ Controls built and provided software and service for the Control System for Multiject's Turntables and invoiced Multiject accordingly. *See* Invoices attached as **Exhibit 2**.

19. The price of the Control System ranged from Thirteen Thousand Dollars ($13,000) per single Control System to Ten Thousand Dollars ($10,000) per Control System when four or more Control Systems were ordered.

*Multiject Failed to Pay RJ Controls for Five Control Systems*

20. In 2013, Multiject ordered five (5) Control Systems from RJ Controls.

21. RJ Controls provided five (5) Control Systems to Multiject, including modular-build services.

22. In January 2014, RJ Controls sent Multiject an invoice in the amount of $59,733 for the five (5) Control Systems. *See* Invoice, attached as **Exhibit 3**.

23. To date, Multiject has failed and/or refused to pay RJ Controls for the five (5) Control Systems.

*Multiject Commits to Ordering Additional Control Systems from RJ Controls*

24. In January 2014, Multiject asked RJ Controls to prepare to install nine (9) additional Control Systems for Turntables starting in April 2014.

25. RJ Controls coordinated the purchase of parts and components needed for the additional Control Systems requested by Multiject.

26. At the end of March 2014, RJ Controls had completed preparations to begin the modular build of the additional nine (9) Control Systems.

*Elder and Multiject Steal RJ Controls' Copyright Information*

27. In or around March 2014, Elder told RJ Controls that Elder wanted copies of all of the Copyright Information for the Control Systems just in case "something happened" to RJ Controls' owner, Paul E. Rogers.

28. Under the impression that the Copyright Information was not going to be improperly used by Multiject or dispersed to third-parties, RJ Controls provided Multiject the Copyright Information.

29. Approximately three (3) days after Multiject received the Copyright Information, Elder informed RJ Controls that it decided to use RSW for assembly and wiring of control systems and not RJ Controls.

30. Upon information and belief, utilizing the designs and Copyright Information for the Control System created by RJ Controls, RSW manufactured and installed for Multiject a control system identical to that of RJ Controls' Control System.

31. Defendants had access to the Copyright Information and, upon information and belief, the control system created by RSW and used by Multiject is identical to RJ Control's Control System.

32. Defendants utilized all or a portion of the Copyright Information without RJ Control's permission or consent.

## COUNT I
## COPYRIGHT INFRINGEMENT
### (All Defendants)

33. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

34. The control system manufactured by RSW and used by Multiject was manufactured by using the Copyright Information and infringe upon one or more of RJ Control's copyrights in violation of 17 U.S.C. § 501, *et seq*.

35. The control system manufactured by RSW and implemented by Multiject is substantially similar to the Control System created by RJ Controls and infringes upon one or more of RJ Control's copyrights in violation of 17 U.S.C. § 501, *et seq*.

36. Elder, as owner of Multiject, was in a position of control and was personally involved in the infringing action of Multiject's decision to send RSW the Copyright Information and is, therefore, personally liable for the act of copyright infringement.

37. Defendants' infringement of RJ Control's Copyright Information was flagrant, deliberate, willful, and with full knowledge of RJ Control's rights in the Copyright Information.

38. RJ Controls has been, and will continue to be, irreparably harmed unless Defendants are enjoined from continuing to use the Copyright Information or from manufacturing, marketing, or selling the Copyright Information.

39. RJ Controls has no adequate remedy at law and cannot obtain relief without the issuance of an injunction and the granting of damages in RJ Controls' favor.

## COUNT II
## VIOLATION OF THE LANHAM ACT
### (All Defendants)

40. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

41. Defendants' infringement of RJ Controls' Copyright Information has caused or is likely to cause confusion or mistake as to RJ Controls being the company responsible for the design and/or manufacture of the control systems that have been or will be manufactured by Defendants.

42. Defendants' infringing conduct violates the Lanham Act, 15 U.S.C. §1125(a), which prohibits "false or misleading representations . . . which is likely to cause confusion or to cause mistake, or to deceive as to affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person."

43. As a result of Defendants' violation of the Lanham Act, RJ Controls has suffered and will continue to suffer damages and has no adequate remedy at law.

## COUNT III
## VIOLATION OF THE
## MICHIGAN CONSUMER PROTECTION ACT
### (All Defendants)

44. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

45. Defendants' use of the Copyright Information has caused a probability of confusion or misunderstanding as to RJ Controls being the company responsible for the design and/or installation of the control system in the Turntables that has been or will be manufactured by Defendants.

46. Defendants' infringing actions are in violation of the Michigan Consumer Protection Act, MCLA §445.903, which prohibits "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services."

47. Defendants should be enjoined from violating the Michigan Consumer Protection Act under MCLA §445.911.

48. RJ Controls has been damaged as a result of Defendants' violation of the Michigan Consumer Protection Act and is entitled to damages and reasonable attorney fees under MCLA §445.911.

## COUNT IV
## BREACH OF CONTRACT
### (Multiject)

49. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

50. RJ Controls and Multiject had a contract whereby RJ Controls agreed to manufacture and install five (5) Control Systems for Multiject and Multiject agreed to pay RJ Controls $59,733.

51. RJ Controls performed its obligations under the contract and delivered and installed five Control Systems.

52. Multiject has failed and/or refused to pay RJ Controls $59,733 for the Control Systems, thereby breaching the contract.

53. As a result of Multiject's breach of contract, RJ Controls has been damaged in an amount not less than $59,733.

## COUNT V
## UNJUST ENRICHMENT
### (Multiject)

54. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

55. Multiject received a benefit from RJ Controls, namely the design, manufacture, and installation of five Control Systems.

56. RJ Controls incurred costs and expenses related to the Control Systems it provided to Multiject.

57. Multiject has failed and/or refused to pay RJ Controls for the Control Systems it received.

58. It is inequitable for Multiject to retain the benefits RJ Controls provided to it without Multiject paying for the Control Systems.

59. As a result of this unjust enrichment, RJ Controls has been damaged in an amount not less than $59,733.

## COUNT VI
## UNJUST ENRICHMENT
## (RSW)

60. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

61. RSW is in possession of RJ Controls' Copyright Information and, upon information and belief, used the Copyright Information to manufacture, install, and sell control systems that are substantially similar to RJ Controls' Control Systems.

62. Accordingly, RSW received a benefit from RJ Controls, namely the Copyright Information that, upon information and belief, allowed RSW to manufacture, install, and sell control systems to Multiject and other third-parties.

63. RSW has failed and/or refused to pay RJ Controls for the right to use the Copyright Information.

64. It is inequitable for RSW to retain the benefits of using RJ Controls' Copyright Information without paying for the use of the Copyright Information.

## COUNT VII
## CONVERSION
### (All Defendants)

65. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

66. RJ Controls is the owner of the title in and to the drawings and computer programs and the Copyright Information referenced above.

67. Upon information and belief, Defendants, individually and collectively, knowingly, intentionally, and without permission or consent from RJ Controls, used the drawings, computer programs, and Copyright Information related to the Control System to prepare, design, create, and install control systems that are identical or substantially similar to the Control System.

68. RJ Control has been damaged by Defendants' actions and is entitled to lost profits, interest, exemplary damages, costs, and reasonable attorneys' fees.

## COUNT VIII
## TORTUOUS INTERFERENCE
## WITH CONTRACT / BUSINESS EXPECTANCY
### (All Defendants)

69. RJ Controls reiterates and incorporates all prior allegations as if fully set forth herein.

70. RJ Controls entered into a contract with Multiject to design and manufacture the Control System for the Turntables.

71. RJ Controls had a business expectancy that it would continue to manufacture the Control System for the Turntables created by Multiject because Multiject asked RJ Controls to make design changes to the Control System and asked RJ Controls to prepare to manufacture and install the Control System for nine (9) Turntables beginning in April 2014.

72. Defendants knew RJ Controls had a contract and/or business expectancy with Multiject to design, manufacture, and install the Control System for the Turntables.

73. Defendants knowingly and intentionally interfered with the contract between RJ Controls and Multiject by utilizing the Copyright Information for the design and construction of the Control System.

74. RJ Controls has been damaged by Defendants' actions and is entitled to damages, costs, and reasonable attorneys' fees.

13

WHEREFORE, RJ Controls prays that:

A. The Court order that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert and participation with them be required to deliver to RJ Controls all copies of products that infringe upon RJ Controls' copyrights.

B. Order that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert and participation with them be enjoined from selling any infringing Control Systems and/or products.

C. Order that Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them be enjoined from engaging in the manufacture and/or installation of infringing Control Systems and/or products.

D. Order Defendants to pay such damages sustained by RJ Controls as a result of Defendants' unlawful acts, but in no event less than the statutory minimum damages for each infringement committed.

E. Order Defendants to pay RJ Controls' enhanced statutory damages in light of the intentional and willful nature of the infringement committed.

F. Order Defendants to pay RJ Controls' costs of this action, together with reasonable attorneys' fees, as provided by the Copyright Act and the Michigan Consumer Protection Act.

G.    Order Multiject to pay RJ Controls' damages as set forth herein.

H.    Order Defendants to pay RJ Controls for any and all damages RJ Controls is entitled to under Michigan and federal law, including costs and reasonable attorneys' fees.

I.    Order such other relief as this Court deems equitable and just.

        FRASCO CAPONIGRO
        WINEMAN & SCHEIBLE, PLLC

        _____
        Henry Wineman (P54752)
        Tracey L. Porter (P69984)
        Attorneys for Plaintiff
        1301 W. Long Lake Road, Suite 250
        Troy, MI  48098
        (248) 334-6767 / (248) 334-0999
        hw@frascap.com
        tp@frascap.com

Dated: March 1, 2016