UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RJ CONTROL CONSULTANTS, INC.
and PAUL E. ROGERS,

                    Plaintiffs,                        Case Number 16-10728

v.                                            Honorable David M. Lawson

MULTIJECT, LLC, RSW TECHNOLOGIES,
LLC, and JACK ELDER,

                    Defendants.

_____/

## OPINION AND ORDER GRANTING MOTION TO DISQUALIFY PLAINTIFFS' EXPERT WITNESS AND MOTIONS FOR SUMMARY JUDGMENT

This case was reassigned to the undersigned after it was remanded by the court of appeals following the partial reversal of an order granting summary judgment on a copyright infringement claim. The court of appeals held that additional evidence, most likely from expert witnesses, should be taken following a period of discovery, and this Court then should decide whether the plaintiffs' software source code is protectable under the Copyright Act. This Court established a case management schedule that set a deadline for the disclosure of expert witness reports under the applicable rules of procedure (nearly a year ago), completion of further discovery (last spring), and motion practice. Defendant Multiject, LLC filed a motion to disqualify the plaintiffs' identified expert witness because he did not submit a report under Federal Rule of Civil Procedure 26(a)(2), and the defendants each filed motions for summary judgment. The plaintiffs had not served an expert witness report even by the motion argument date of October 28, 2021, and they have not offered a valid excuse for their failure to do so. Nor have they shown that their disclosure failure was harmless. The motion to disqualify the expert witness, therefore, will be granted. Without expert testimony, the plaintiffs cannot sustain their burden of showing that the software

source code is protectable under the Copyright Act, and therefore the defendants are entitled to summary judgment as a matter of law.

I.

The court of appeals aptly summarized the factual and procedural history of the case as follows:

> This is a copyright dispute over the use of software code and technical drawings for an industrial control system related to plastic injection molding. The district court held that Plaintiff-Appellant RJ Control Consultants, Inc. and its sole shareholder, Paul Rogers, (collectively, "Plaintiffs") failed to establish copyright infringement because the use of a design to manufacture a control system does not constitute copyright infringement. The district court accordingly granted summary judgment against Plaintiffs on their copyright infringement claim. The district court further granted summary judgment against Plaintiffs as to their Lanham Act claim, declined to exercise supplemental jurisdiction over the remaining state law claims, and denied as moot Plaintiffs' motion to compel discovery. Plaintiffs appeal the order denying reconsideration of the district court's grant of summary judgment as to the copyright claim as well as the denial of their motion to compel as moot.

> The district court characterized this as a "business dispute which soured a friendship." That friendship was between Plaintiff-Appellant Paul Rogers and Defendant-Appellee Jack Elder. Rogers was the principal and sole shareholder of RJ Control Consultants, Inc. ("RJ Control"), a Michigan company that creates industrial control systems. Elder is the sole owner of Defendant-Appellee Multiject, LLC ("Multiject"), a Michigan business which engineers and sells various industrial accessories related to plastic injection molding. Their friendship turned into a business relationship when Elder approached Rogers seeking Rogers's expertise and assistance in developing a control system for an injection molding machine.

> In 2008, Rogers and Elder entered into an oral agreement whereby Rogers would develop a rotary turntable control system for Elder and Multiject. This turntable control system is the "brain" of the turntable, allowing the turntable to move and operate. RJ Control, through Rogers's work, updated the control system design in 2013, labeling the newest iteration as "Design 3." The parties dispute the invoicing for Design 3.

> In March of 2014, Elder asked Rogers for copies of Design 3's diagrams as well as the software source code "in case something happened" to Rogers. Rogers disclosed that information to Multiject, believing that Multiject and Elder would not improperly use or disclose the information to third parties. Three days after providing that information to Multiject, Elder informed Rogers and RJ Control that Elder and Multiject would no longer need Rogers's services and would instead use

- 2 -

Defendant-Appellee RSW Technologies, LLC ("RSW") for the assembly and wiring of the control systems.  Elder said that Multiject would like to continue working with Rogers as a technical consultant for the system design and that Multiject appreciated his expertise but that "this comes down to a business decision."

Multiject and RSW — RJ Control's replacement — had a long-standing business relationship with each other, and Multiject was already considering switching to RSW when it asked Rogers for the design diagrams.  Elder claims that Multiject was increasingly concerned with Rogers's pricing, worrying that Rogers was charging Multiject too much relative to competitors, at least to the extent Rogers was performing manual labor rather than designing the systems.  For that reason, Elder and Multiject decided to "switch out" RJ Control and Rogers for RSW, for purposes of manufacturing rotary tables.

On the same day that Elder informed Rogers that Multiject would be using RSW to assemble and wire the control systems, RSW sent Elder a quote that explicitly referenced the assembly and wiring of "RJ Table Control."  Elder, Multiject, and RSW used Design 3 — both the software code and the technical drawings — in the assembly and wiring of new control systems.  RSW did not make any changes in the design when it used Design 3.  RSW claims that it did not know Rogers and RJ Control had separately designed Design 3 and did not know there was dispute as to whether Elder properly paid Rogers for that work; that is to say, RSW believed Multiject had permission to build the control systems using the software and technical drawings.

On February 17, 2016 — nearly two years after Rogers initially supplied the software code and technical drawings to Elder — Rogers obtained two Copyright Certificates of Registration: one for the "Control System Turn Table Software: Design 3" (i.e., the software code) and another for "Control System Turn Table Schematics: Design 3" (i.e., the technical drawings).

Nearly two weeks after receiving those copyrights, RJ Control brought suit against Multiject, Elder, and RSW.  Over a year later, RJ Control filed an amended complaint, adding Rogers as a plaintiff. That amended complaint brought several federal and state law claims: (1) copyright infringement, (2) trademark infringement, (3) violation of the Michigan Consumer Protection Act, (4) breach of contract, (5) unjust enrichment, (6) conversion, and (7) tortious interference with contract/business expectancy.  RSW and Elder/Multiject separately brought motions for summary judgment on all claims.  Before the district court ruled on those motions, Plaintiffs brought a motion to compel discovery responses.  On November 8, 2018, the district court granted Defendants' motions for summary judgment. In doing so, the court dismissed the two federal claims (copyright and trademark infringement) with prejudice.  The court dismissed the state law claims without prejudice, declining to exercise supplemental jurisdiction after the dismissal of the federal claims.  Finally, the court denied as moot Plaintiffs' motion

> to compel. That same day, the district court entered its final judgment dismissing the case.
>
> That was not, however, the end of the matter. Plaintiffs thereafter filed a motion for reconsideration of the dismissal of the copyright claim and denial as moot of their motion to compel. The district court denied that motion on January 18, 2019, but a week later set a hearing on the motion. Nearly two weeks later, the district court vacated its prior denial of the motion. At the hearing on February 11, 2019, the district court expressed interest in seeing the entire software code as it reconsidered its decision, also noting that the court may need an expert in making its determination regarding the software's copyrightability. Plaintiffs thereafter supplied the full code to the court. Ten months later, the district court denied the motion for reconsideration, finding that nothing in the papers supplied to the court — the full source code — revealed that the court erred in its original dismissal of the copyright-infringement claim. The district court provided no further explanation. Plaintiffs then brought this appeal.

*RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 450-52 (6th Cir. 2020) (footnotes omitted).

The Sixth Circuit affirmed the dismissal of the plaintiffs' infringement claims relating to the technical drawings after concluding that any "use" of those drawing to produce the control systems in dispute implicated patent law and could not support any viable claim under the Copyright Act. *Id.* at 456 ("We [] agree with the district court that 'the use of the Design 3 drawing to manufacture a control system is not an act of copyright infringement.' The copyright protection extends to the drawing itself, affording Plaintiffs the exclusive right to prepare derivative works, distribute copies, and display the copyright. 17 U.S.C. § 106. Such protection, however, does not extend to the use of those drawings to create the useful article described in those drawings, as patent law — with its stricter standards requiring novelty — governs such use protection."). The court of appeals also noted that the defendants did not dispute the *prima facie* validity of the plaintiff's copyrights in either the software code or technical drawings. *Id.* at 454 ("Because the validity of the copyrights is not contested, we consider the technical drawing and software code copyrights under the second prong. The second prong 'tests whether any copying occurred (a

factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter).'") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004)).

However, the Sixth Circuit held that the grant of summary judgment on the software copyright claim was improper because the assessment of which portions of the code comprised creative expressions protected by copyright necessarily would entail a "line-by-line" analysis of the code, and at least one of the two applicable rules of decision for that analysis (the doctrine of "*scenes a faire*"; the other being merger) would require the taking of expert evidence to inform the Court about what idioms in the code might be standard passages used as a matter of course in the development of similar software in the industry, and which might have been constructed through more creative choices by the software designer. The court of appeals found that it was error for the district court to render a wholesale ruling on the protectability of the software code without enlisting or permitting the development of any informative expert testimony — or, for that matter, any other discovery on the question of protectability. As the panel explained:

> In considering these two doctrines, the assistance of an expert is desirable, if not required. Similarly, we are unable to undertake any analysis under the *scenes a faire* doctrine without any expert testimony — much less without any briefing or argument — regarding standard industry practices regarding control systems and the relevant software. The district court here noted as much but nonetheless denied the motion for reconsideration before any such expert was hired or appointed. The technology here is complex, as are the questions necessary to establish whether that technology is properly protected under the Copyright Act. Which aspects or lines of the software code are functional? Which are expressive? Which are commonplace or standard in the industry? Which elements, if any, are inextricably intertwined? Without any record evidence — whether expert or not — to answer these material questions, there indeed remains a genuine factual dispute. Accordingly, we reverse the district court's grant of summary judgment as to the copyright-infringement claim regarding the software copyright, Copyright Registration Number TXu 1-978-284, and remand the matter to the district court for the taking of additional evidence.

> Plaintiffs also appeal the district court's denial of their motion to compel discovery. The district court denied that motion as moot. We review denials of motions to

compel discovery for an abuse of discretion.  To the extent the discovery requests are relevant to the surviving claim, i.e., copyright infringement of the software, the district court's denial is vacated.  The remaining requests, however — those relevant to the technical drawings and the state-law claims — are indeed moot and, as such, the district court's denial of those requests as moot is affirmed.

*RJ Control*, 981 F.3d at 458-59 (citations omitted).

On January 21, 2020, after the case was remanded, the Court held a status conference with counsel for the parties.  During the conference, the parties indicated that they would need some time to pursue the discovery relating to software code protectability that previously had been denied, and that the facts developed during that process might support further dispositive motion practice.  The Court gave the parties a schedule, and the next day it memorialized it in a supplemental scheduling order that established deadlines for expert disclosures under Federal Rule of Civil Procedure 26(a)(2) and for filing any dispositive motions and motions challenging experts.  That order stated:

> [P]ursuant to Federal Rule of Civil Procedure 16, the following supplemental case management deadlines are established.  *Expert disclosures required by Federal Rule of Civil Procedure 26(a)(2) must be served by both sides **on or before February 26, 2021**.  All remaining discovery in this matter must be completed **on or before April 30, 2021**.*  Dispositive motions and motions challenging experts must be filed **on or before May 17, 2021**.

Supp. Sched. Order, ECF No. 82, PageID.2597 (italics added).  On the same date, the Court issued a separate order referring the plaintiffs' revived motion to compel discovery responses to the assigned magistrate judge.  On March 24, 2021, the Court issued an order referring the case to a mediator for a facilitated mediation.  On April 12, 2021, Magistrate Judge Elizabeth A. Stafford issued an order granting in part the plaintiffs' motion to compel and compelling responses to most of the discovery requests, limiting the temporal scope of some requests, and denying the requests for customer correspondence and documents relating to technical drawings.

On April 28, 2021, the parties filed a stipulation to extend the discovery and motion filing deadlines, based on their desire to complete the mediation before completing their outstanding discovery tasks.  The Court later issued an order (ECF No. 89) extending the discovery completion date to June 30, 2021 and the dispositive motion filing deadline to July 14, 2021.  Notably, that order did not extend the expert disclosure deadline, and further it was ordered that "[a]ll other provisions of the supplemental scheduling order remain in full force and effect."  *Id.* at PageID.2746.

On May 27, 2021, the Court held a brief status conference with the parties during which they reported that the mediation had failed, and they were unsure how close they might be to a resolution since their respective positions were not disclosed by the mediators.  The Court observed that the motion filing deadline was looming and asked if the Court could do anything to move the case toward a resolution.  The parties indicated that they thought an in-person settlement conference possibly could be more productive, and the Court indicated that it would consider that possibility after motions were filed.  No concerns relating to discovery or any prospective motion practice were raised at that time.

According to the plaintiffs, in late February 2021 the parties served disclosures that "informed [each other] of the identities and roles of their opponent's experts," which apparently consisted of nothing more than the names and general indications about the topical expertise of the witnesses.  The plaintiffs' disclosures identified David E. Lockhart of Sycamore Technical Services and Sycamore Automation and Controls as their expert witness.  The plaintiffs admit that "[n]one of the parties served a report by their respective experts with their February 26, 2021 expert disclosures, nor have any expert reports been served to date."  Plfs.' Resp., ECF No. 98, PageID.3366.

The present motions followed.

## II.

Defendant Multiject asks the Court for an order precluding the plaintiffs from relying on any expert testimony, including from David Lockhart, because the plaintiffs never served a report that conforms with Rule 26(a)(2)(B).  The plaintiffs did serve a report on February 26, 2021 that identified Lockhart as "an expert in industrial control system design, engineering, and integration including, but not limited to, control panel design, implementation, programming, performance, and integration as well as concept development and evaluation," and they indicated that "Mr. Lockhart will testify regarding the Plaintiffs' code that was used in each control system produced by RSW Technologies, LLC ("RSW") for Multiject, LLC ("Multiject"), industry standard practices for control systems and other external considerations, as well as the unique nature of Plaintiffs' code."  Plfs.' Expert Disclosures dated Feb. 26, 2021, ECF No. 94-1, PageID.3351-52.  But no further details were included about Lockhart's opinions or anticipated testimony, the facts he considered, or his reasoning.  Multiject argues that this critical lapse is neither substantially justified nor harmless.

The plaintiffs concede that no expert report by Lockhart was served by the expert disclosure deadline, and they say that to date no expert reports have been produced by any party.  However, they say that they "reasonably misinterpreted" the Court's supplemental scheduling order and assumed that expert disclosures were due "90 days before trial," as specified in Rule 26(a)(2)(D)(i).  They also assert that the production of the software code used by the defendants in the control units was not completed until after April 12, 2021, when the magistrate judge's order resolving the motion to compel was issued.  The plaintiffs say that, because that discovery was not

produced until after the expert disclosure deadline, "it would have been impossible for Plaintiffs' expert to have reviewed and analyzed this discovery to include in any report," "[u]nder these unique  circumstances, Plaintiffs operated in good faith that their expert's report was not due until 90 days before trial," and "[p]laintiffs fully expected the parties to exchange their expert reports on or before that time," pointing out that "[p]resently, no trial date has yet been established." *Id.* at PageID.3369.  The plaintiffs contend that the Court should ignore this breach, set a trial date, and allow the parties to exchange their reports 90 days in advance.

Under Federal Rule of Civil Procedure 26(a)(2)(A), "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."  For retained expert witnesses, Rule 26(a)(2)(B) includes this additional requirement: "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness," and the report must include "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; [and] (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years."  Fed. R. Civ. P. 26(a)(2)(B).  If the scheduling order is silent on a deadline, "the disclosures must be made [] at least 90 days before the date set for trial or for the case to be ready for trial."  Fed. R. Civ. P. 26(a)(2)(D)(i).  Otherwise, they must be made "at the times and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).

When a party does not comply with the expert disclosure requirements, the party "'is not allowed to use' the information or person that was not disclosed 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'"  *Baker Hughes Inc. v. S&S*

*Chem., LLC*, 836 F.3d 554, 567 (6th Cir. 2016) (quoting Fed. R. Civ. P. 37(c)(1)).  According to the Sixth Circuit, "Rule 37(c)(1) mandates that a trial court sanction a party for discovery violations in connection with Rule 26(a) unless the violations were harmless or were substantially justified." *Sexton v. Uniroyal Chem. Co.*, 62 F. App'x 615, 616 n.1 (6th Cir. 2003).  "'Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material.'" *Ibid.* (quoting *Ames v. Van Dyne*, 100 F.3d 956, 1996 WL 662899, at *4 (6th Cir. Nov. 13, 1996) (Table)).  "'The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless.'" *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004)).  "The party requesting exclusion under Rule 37(c)(1) need not show prejudice, rather the non-moving party must show that the exclusion was 'harmless' or 'substantially justified.'" *Saint Gobain Autover USA, Inc. v. Xinyi Glass N. Am.*, Inc., 666 F. Supp. 2d 820, 826 (N.D. Ohio 2009); *see also Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *3 (6th Cir. June 25, 1999)).

The Sixth Circuit has identified five factors to consider when assessing whether a party's omitted or late disclosure is "substantially justified" or "harmless": "'(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.'" *Howe v. City of Akron*, 801 F.3d 718, 747-48 (6th Cir. 2015) (quoting *Russell v. Abs. Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)).

The plaintiffs admit that they never complied with their obligation to disclose a detailed expert report in compliance with Rule 26(a)(2)(B) by the expert disclosure deadline, and that to date they still have not produced any expert report. They have not shown that the failure to honor their discovery obligations was either substantially justified or harmless. The mandatory exclusion sanction under Rule 37(c) therefore precludes the presentation of any testimony by their expert about the plaintiffs' software code. None of the factors favor a finding of harmlessness in the present circumstances.

First, the surprise to the defendants would be extreme, because, if the Court adopts the plaintiffs' proposal for pretrial discovery, then the defendants would have to confront at trial the opinions of an expert whose detailed report they would not have seen before the 90-day-before-trial deadline, and who they would not have deposed, and cannot depose since the discovery period has closed. Second, there is no ability to cure that surprise other than rebooting the entire supplemental discovery process. The plaintiffs have offered no explanation to justify that wholesale disruption of this litigation. Third, even though no trial date presently has been set, the Court's trial docket is extremely congested due to circumstances arising from the ongoing global pandemic, which have constrained the Court's ability to conduct jury trials in all cases. The Court's calendar restrictions do not permit the luxury of setting cases for trial when motion practice is all that might be necessary to bring the case to an efficient resolution. The Court's supplemental scheduling order was designed to marshal exactly that sort of productive pretrial litigation of the remaining claim, but that goal has been scuttled by the plaintiffs' failure to comply with their essential discovery obligations. Fourth, the expert evidence in question is indispensable to resolution of the surviving copyright claim, because, as the Sixth Circuit expressly held, the Court on remand cannot render a dispositive ruling on protectability of the software code without

considering expert evidence to inform the application of the *scenes-a-faire* doctrine, which considers what portions of the code may be standard idioms commonly used in the relevant industry. *RJ Control Consultants*, 981 F.3d at 454.

Nor have the plaintiffs shown that their failure to comply with ordered expert disclosure requirement substantially justified. They assert that they misunderstood the Court's scheduling directives and assumed that expert reports did not need to be produced until 90 days before trial, the default deadline specified by Federal Rule of Civil Procedure 26(a)(2)(D)(i). That explanation is not plausible and is not based on a reasonable interpretation of either the rule or the orders of the Court. The rule states plainly that the default deadline applies only "*[a]bsent a stipulation or a court order.*" Fed. R. Civ. P. 26(a)(2)(D)(i) (emphasis added). The Court's supplemental scheduling order issued on January 22, 2021 plainly stated that all "*[e]xpert disclosures required by Federal Rule of Civil Procedure 26(a)(2) must be served* by both sides **on or before February 26, 2021**." Supp. Sched. Order, ECF No. 82, PageID.2597 (italics added). The discovery cutoff and motion filing deadline were adjourned later at the parties' request, but the order extending those deadlines also stated — plainly — that all other provisions of the supplemental scheduling order remained in full force and effect. No request to extend the expert disclosure deadline ever was made or granted. The plaintiff could not reasonably have misread the Court's order as permitting the disclosure of expert reports at any time after February 26, 2021, regardless of any later schedule adjustments in the case.

Moreover, the plaintiffs' gloss on the scheduling order is illogical when considered in the context of the post-remand litigation. When the Court first met with the parties after remand for a Rule 16 conference, plaintiffs' counsel stated that they wanted to engage in the discovery that had been precluded earlier and then file additional dispositive motions. The defendants also sought to

file dispositive motions.  The court of appeals had emphasized the importance of expert testimony for evaluating the protectability of the software code.  *RJ Control Consultants*, 981 F.3d at 458 ("In considering these two doctrines [merger and *scenes a faire*], the assistance of an expert is desirable, if not required.  Similarly, we are unable to undertake any analysis under the *scenes a faire* doctrine without any expert testimony.").  As the court of appeals observed, "[t]he technology here is complex, as are the questions necessary to establish whether that technology is properly protected under the Copyright Act."  *Ibid.*  Any meaningful further motion practice would be impossible without supplementing the record with expert reports and, likely, depositions.  Holding off on the disclosure of expert opinions until 90 days before an unscheduled trial date, as the plaintiffs say they interpreted the scheduling order, simply makes no sense.

It is undisputed here that the plaintiffs failed to disclose any expert report compliant with Rule 26(a)(2)(B) by the established deadline.  Merely disclosing an expert's name and topical area of expertise and making the expert available for deposition does not satisfy or obviate the obligation to disclose a full report meeting the requirements of Rule 26(a)(2)(B).  Expert depositions "may be conducted *only* after the report is provided."  Fed. R. Civ. P. 26(b)(4)(A) (emphasis added).  Moreover, "the mere fact that witnesses may be available for deposition is insufficient to excuse noncompliance with Rule 26(a)(2) because 'obviat[ing] the need to provide Rule 26(a)(2) disclosures and reports by simply making . . . experts available to be deposed would render the Rule meaningless[.]'"  *Ogle v. Koorsen Fire & Sec., Inc.*, 336 F. Supp. 3d 874, 877 (S.D. Ohio 2018) (quoting *Kassim v. United Airlines, Inc.*, 320 F.R.D. 451, 454 (E.D. Mich. 2017)); *see also id.* at 879 ("[W]ithout dispute, the document filed by Plaintiff's counsel was unaccompanied by any report authored by any of the experts identified. Thus, . . . the disclosure, on its face, fails to comply with Rule 26(a)(2)(B). . . . As noted above, the mere identification of

each expert's name and contact information fails to satisfy [even the less detailed] disclosure requirements of Rule 26(a)(2)(C)."); *Little Hocking Water Ass'n, Inc. v. E.I. DuPont de Nemours & Co.*, No. 09-1081, 2015 WL 1105840, at *8 (S.D. Ohio Mar. 11, 2015) ("Rule 26(a)(1)(i) already requires parties to provide the name and contact information of each individual likely to have discoverable information 'along with the subjects of that information.'").

The plaintiffs argue that their failure to disclose was "justified" because the magistrate judge did not rule on their motion to compel discovery responses until around a month after the expert disclosure deadline had passed. The plaintiffs had demanded that the defendants produce the source code copies it had used in the development of the turntable control. But the plaintiffs' position that this information was necessary for the expert to give an opinion on protectability is belied by the undisputed fact that the software code that was sought in discovery already was in the plaintiffs' possession from well before this litigation even commenced; the plaintiffs supplied that code initially to the defendants, who then allegedly misappropriated it wholesale and verbatim contrary to the plaintiffs' copyright. The plaintiffs admit in their response to the Multiject defendants' motion for summary judgment that the entire software code was produced by them and disclosed upon demand to the defendants during the course of their commercial dealings. There may have been some evidentiary purpose in requesting the defendants to produce code samples to verify and bolster the basis for the plaintiffs' claim of unlawful copying, but the undisputed record contradicts the plaintiffs' assertion that their experts' analysis of the codebase was delayed or obstructed by any late discovery production.

The plaintiffs also argue that the discovery violation was "harmless" because no party has yet produced any expert reports in the case. But that argument overlooks the reality that the plaintiffs bear the burden of proof on their copyright infringement claims, and it is their obligation

- 14 -

to prove which portions of the software code are subject to copyright protection. Moreover, their position ignores the explicit mandate by the court of appeals, discussed above, which remanded the case to this Court for the taking of additional evidence — including expert evidence — to inform the determination of protectability that is essential to their copyright claim. *RJ Control*, 981 F.3d at 458. The plaintiffs' failure to disclose the expert opinions on that issue is not harmless because the Court is unable now to evaluate the evidence to determine if the plaintiffs have presented a triable issue of fact on the question whether the software code — or which portions of it — is subject to copyright protection. The Sixth Circuit consistently has held that harmlessness is not established where disclosures bearing on dispositive issues were not produced until after an opposing party filed a motion for summary judgment. *E.g.*, *Emanuel v. County of Wayne*, 652 F. App'x 417, 424 (6th Cir. 2016) (affirming exclusion of affidavit testimony disclosed after opposing party's summary judgment motion was filed); *Taylor v. Thomas*, 624 F. App'x 322, 329, 2015 WL 4604682 (6th Cir. 2015) (expert disclosure first made in the defendant's response to the plaintiff's motion for summary judgment was not harmless, holding that "it was not only permissible, but salutary, for the district court to require [the defendant] — rather than [the plaintiff] — to bear the consequences of his violation of the rule.") (citing *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013)). The plaintiffs' failure to produce a complete and timely expert report is not harmless when it comes too late to inform dispositive pretrial litigation and rulings by the Court.

And, as noted, the failure to disclose by the court-imposed deadline is not harmless when the defendants were denied any timely opportunity to depose the expert with the benefit of his report. *See Jaiyeola v. Toyota Motor N. Am., Inc.*, No. 19-1918, 2021 WL 518155, at *4 (6th Cir. Feb. 1, 2021).

Of course, for the occasional inadvertent oversight in discovery, "[a] noncompliant party may avoid sanction if 'there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.'" *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quoting *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010)). No reasonable explanation for the failure to produce timely expert disclosures has been offered here. Multiject's motion to disqualify the plaintiffs' expert witnesses, including witness David E. Lockhart, will be granted.

III.

The defendants raise alternative arguments in their motions for summary judgment, but critical here is the contention that all of the elements of the software code that the plaintiff says he produced originally are unprotectible "functional" elements for which copyright protection is not available under the doctrines of merger and *scenes a faire*. They argue that the plaintiffs cannot establish the protectability of any portions of the software code because they have not timely produced any expert analysis of the code line-by-line in light of those doctrines, and, moreover, they have not even identified any specific portions of the code that they contend are protected by copyright as creative expressions of the programmer's art.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court

- 16 -

need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The party bringing the summary judgment motion must inform the court of the basis for its motion and identify portions of the record that demonstrate that no material facts are genuinely in dispute. *Id.* at 558. (citing *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).  "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

The Copyright Act "sets forth three basic conditions for obtaining a copyright.  There must be a 'wor[k] of authorship,' that work must be 'original,' and the work must be 'fixed in any tangible medium of expression.'" *Google LLC v. Oracle Am., Inc.*, --- U.S. ---, 141 S. Ct. 1183, 1196 (2021) (quoting 17 U.S.C. § 102(a)).  "[T]he statute [also] lists certain kinds of works that copyright can protect. They include 'literary,' 'musical,' 'dramatic,' 'motion pictur[e],' 'architectural,' and certain other works." *Ibid.*

"In 1980, Congress expanded the reach of the Copyright Act to include computer programs. And it defined 'computer program' as 'a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result.'" *Ibid.* (quoting 17 U.S.C. § 101). "[T]he statute [also] sets forth limitations on the works that can be copyrighted, including works that the definitional provisions might otherwise include. It says, for example, that copyright protection cannot be extended to 'any idea, procedure, process, system, method of operation, concept, principle, or discovery.'" *Ibid.* (quoting 17 U.S.C. § 102(b)).  "These limitations, along with the need to 'fix' a work in a 'tangible medium of expression,' have often led courts to say, in

shorthand form, that, unlike patents, which protect novel and useful ideas, copyrights protect 'expression' but not the 'ideas' that lie behind it." *Ibid.* However, as the Sixth Circuit has explained, "[i]n *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004), [the court] considered this distinction with a software program and noted that 'the task of separating expression from idea in this setting is a vexing one,' describing the distinction between idea and expression as an 'elusive boundary line.'" *RJ Control*, 981 F.3d at 457 (quoting *Lexmark*, 387 F.3d at 535). "To distinguish ideas from expression in the software context, courts have considered two doctrines: the doctrine of merger and '*scenes a faire*.' These doctrines are used to filter out 'unprotectible elements.'" *Ibid.* (citing *Lexmark*, *supra*; *Kohus v. Mariol*, 328 F.3d 848, 856 (6th Cir. 2003)).

The court of appeals discussed at length the application of these complementary doctrines in its opinion remanding the copyright claim to this Court. First, the court explained the merger doctrine. "Where the expression is essential to the statement of the idea . . . the idea and expression are said to have merged. In these instances, copyright protection does not exist because granting protection to the expressive component of the work necessarily would extend protection to the work's uncopyrightable ideas as well.'" *Ibid.* (quoting *Lexmark*, 387 F.3d at 535). "In other words, if the noncopyrightable and copyrightable elements are inextricably intertwined, the noncopyrightable aspect trumps the copyrightable one, rendering the entire work uncopyrightable." *Ibid.* (citing *Murray Hill Publ'ns Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 n.2 (6th Cir. 2004) ("Of the two principles, that ideas are not protectible and that expressions are protectible, it is the former that is the stronger.")). "Distinguishing between those ideas and expression in the context of software code requires a line-by-line understanding of the code, including what specific lines in that code are purely functional and whether those

unprotectible lines are intertwined with any expressive lines." *Id.* at 457-58 (citing *Lexmark*, 387 F.3d at 535; *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1992)). "If there are 'many possible ways of accomplishing a given task,' then 'the programmer's choice of program structure and design may be highly creative and idiosyncratic,' thus pointing in favor of the software — or at least, that particular line — being a protectible expression." *Id.* at 458 (quoting *Sega*, 977 F.2d at 1524). "On the other hand, such computer programs are, 'in essence, utilitarian articles' and '[a]s such, they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands.'" *Ibid.* "Such utilitarian features of the program are not protected, and if they are intertwined with any copyrightable elements, the unprotected elements trump the protected elements." *Ibid.* (citing *Lexmark*, 387 F.3d at 535; *Murray Hill*, 361 F.3d at 318 n.2).

Second, the court of appeals discussed the law concerning "*scenes a faire*." That doctrine "similarly distinguishes between ideas and expression. Under this doctrine, certain stock or standard phrases or code lines that 'necessarily follow from a common theme or setting' are not protected." *Id.* at 458 (quoting *Lexmark*, 387 F.3d at 535). "'In the computer software context, the doctrine means that the elements of a program dictated by practical realities — e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices — may not obtain protection.'" *Ibid.*; *see also Sega*, 977 F.2d at 1524 ("To the extent that a work is functional or factual, it may be copied."). "In considering the protectability of a particular copyright under this doctrine, courts may look at 'external considerations' such as industry standard practices." *Ibid.* (citing *Kohus*, 328 F.3d at 856). "Where

the expression is standard or commonplace, then plaintiffs may not claim copyright protection of that software." *Ibid.* (citing *Lexmark*, 387 F.3d at 535-36; *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1473 (9th Cir. 1992) (affirming district court's finding that "[p]laintiffs may not claim copyright protection of an . . . expression that is, if not standard, then commonplace in the computer software industry")).

The defendants are entitled to judgment as a matter of law on the infringement claims because the plaintiffs have failed to put forth any expert evidence that identifies any specific portions of the code that they claim are protectible. They argue in a generalized manner that "[t]he source code is the expression of Paul Rogers's views about the unique functions to be performed by the Control System," "[t]he options available to Rogers as the source code author to design and implement his vision for the Control System are virtually limitless," and "the possible combinations to express the intended result [were] bound only by his creative process." They contend that "expressive aspects of the source code that differentiate it from rote, standardized functionality that are the result of Rogers' unique vision and design, include his choice as to how the code itself interacts with the real world." However, this entire section of the opposition consists of little more than wholesale quotations lifted verbatim from Rogers' own affidavit, and in substance it offers little more than a vague exegesis on the general principles of protectability for software code. It falls far short of the line-by-line analysis contemplated by the court of appeals.

The argument on protectability also is devoid of citations of any case law on point, and it is unsupported by any other pertinent evidence — particularly expert evidence — illuminating what industry standards may prevail in the design of similar software code. Nowhere in the plaintiffs' presentation do they suggest what qualifications Rogers holds to opine on the existence or nature of any software industry coding standards, or the confluence of any aspects of the code

with those standards.  In any event, Rogers was not disclosed as an expert witness, and no report

was produced even in his capacity as a non-retained expert under Rule 26(a)(2)(C).  Moreover, the

plaintiffs do not identify a single distinct line of the software code that comprises protectible

creative expression.  As the Sixth Circuit explained in its opinion on remand:

> The technology here is complex, as are the questions necessary to establish whether
> that technology is properly protected under the Copyright Act. Which aspects or
> lines of the software code are functional? Which are expressive? Which are
> commonplace or standard in the industry? Which elements, if any, are inextricably
> intertwined? Without any record evidence — whether expert or not — to answer
> these material questions, there indeed remains a genuine factual dispute.

*RJ Control*, 981 F.3d at 458 (citing *Kohus v. Mariol*, 328 F.3d 848, 856, 857-58 (6th Cir. 2003));

*see also Kohus*, 328 F.3d at 856 ("[I]n cases like this one, that involve a functional object rather

than a creative work, it is necessary to eliminate those elements dictated by efficiency.  To this

end, the merger doctrine establishes that when there is essentially only one way to express an idea,

the idea and its expression are inseparable, i.e., they merge, and copyright is no bar to copying that

expression.  In the present case expert testimony will likely be required to establish what elements,

if any, are necessary to the function of any latch designed for the upper arm of a collapsible

playyard.") (citations and quotations omitted).

The plaintiffs have not produced *any* evidence to answer these questions, despite the

agenda that the court of appeals teed up for them.  The party who bears the burden of proof must

present enough evidence to establish a jury question as to each element of its claim.  *Davis v.*

*McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).  Failure to prove an essential element of a claim

renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enters., Inc. v.*

*Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

It is well settled that where a party fails to produce timely disclosures of expert evidence

essential to the success of a claim, summary judgment must be granted.  *Jaiyeola*, 2021 WL

518155, at *4 ("Because Jaiyeola failed to put forth any admissible expert evidence in support of his claims, the district court properly granted the defendants' motion for summary judgment and denied his cross-motion for summary judgment."). So it is, and must be, in this case. The plaintiffs have failed to produce the essential expert proofs that they were afforded ample opportunity to procure and disclose during the post-remand proceedings. Without those proofs, they cannot demonstrate that their source code is protectable under the Copyright Act, and they cannot prevail at trial on their infringement claims.

IV.

The plaintiffs' failure to disclose any report of an expert witness was not substantially justified or harmless, and therefore they are barred from relying on any expert testimony at the summary judgement stage or at trial. Without expert evidence, the plaintiffs cannot demonstrate that any of their source code is protectable under the Copyright Act within the scope of the remand order by the court of appeals.

Accordingly, it is **ORDERED** that the motion by defendants Multiject, LLC and Jack Elder to disqualify plaintiff's experts (ECF No. 94) is **GRANTED**.

It is further **ORDERED** that the defendants' motions for summary judgment (ECF No. 92, 93) are **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 18, 2022