UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RJ CONTROL CONSULTANTS, INC.
and PAUL E. ROGERS,

                Plaintiffs,           Case Number 16-10728

v.                                           Honorable David M. Lawson

MULTIJECT, LLC, RSW TECHNOLOGIES,
LLC, and JACK ELDER,

                Defendants,
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR ATTORNEY'S FEES

The Court granted the defendants' motions for summary judgment and dismissed the plaintiff's remaining claims brought under the Lanham Act and Copyright Act. The defendants now move for an award of attorney's fees under those statutes. Following oral argument, the Court directed the parties to file supplemental briefs, which have been received. Considering the record as a whole, this case falls into the "exceptional" category where reverse fee shifting under the Lanham Act is justified. And the defendants are entitled to attorney's fees as prevailing parties under the Copyright Act. The motions, therefore, will be granted.

I.

This case came to the undersigned after it was remanded by the Sixth Circuit for further proceedings on the sole surviving claim for infringement of the plaintiffs' copyright of certain software code, whereupon it was reassigned from the Honorable Avern Cohn. The Sixth Circuit aptly summarized the factual and procedural history of the case, which is set forth here at length because it is relevant to the present motions.

This is a copyright dispute over the use of software code and technical drawings for an industrial control system related to plastic injection molding. The district court held that Plaintiff-Appellant RJ Control Consultants, Inc. and its sole shareholder, Paul Rogers, (collectively, "Plaintiffs") failed to establish copyright infringement because the use of a design to manufacture a control system does not constitute copyright infringement. The district court accordingly granted summary judgment against Plaintiffs on their copyright infringement claim. The district court further granted summary judgment against Plaintiffs as to their Lanham Act claim . . . . Plaintiffs appeal the order denying reconsideration of the district court's grant of summary judgment as to the copyright claim . . . .

The district court characterized this as a "business dispute which soured a friendship." That friendship was between Plaintiff-Appellant Paul Rogers and Defendant-Appellee Jack Elder. Rogers was the principal and sole shareholder of RJ Control . . ., a Michigan company that creates industrial control systems. Elder is the sole owner of Defendant-Appellee Multiject . . . , a Michigan business which engineers and sells various industrial accessories related to plastic injection molding. Their friendship turned into a business relationship when Elder approached Rogers seeking Rogers's expertise and assistance in developing a control system for an injection molding machine.

In 2008, Rogers and Elder entered into an oral agreement whereby Rogers would develop a rotary turntable control system for Elder and Multiject. This turntable control system is the "brain" of the turntable, allowing the turntable to move and operate. RJ Control, through Rogers's work, updated the control system design in 2013, labeling the newest iteration as "Design 3." The parties dispute the invoicing for Design 3.

In March of 2014, Elder asked Rogers for copies of Design 3's diagrams as well as the software source code "in case something happened" to Rogers. Rogers disclosed that information to Multiject, believing that Multiject and Elder would not improperly use or disclose the information to third parties. Three days after providing that information to Multiject, Elder informed Rogers and RJ Control that Elder and Multiject would no longer need Rogers's services and would instead use Defendant-Appellee RSW Technologies . . . for the assembly and wiring of the control systems. Elder said that Multiject would like to continue working with Rogers as a technical consultant for the system design and that Multiject appreciated his expertise but that "this comes down to a business decision."

Multiject and RSW — RJ Control's replacement — had a long-standing business relationship with each other, and Multiject was already considering switching to RSW when it asked Rogers for the design diagrams. Elder claims that Multiject was increasingly concerned with Rogers's pricing, worrying that Rogers was charging Multiject too much relative to competitors, at least to the extent Rogers was performing manual labor rather than designing the systems. For that reason, Elder and Multiject decided to "switch out" RJ Control and Rogers for RSW, for purposes of manufacturing rotary tables.

> On the same day that Elder informed Rogers that Multiject would be using RSW to assemble and wire the control systems, RSW sent Elder a quote that explicitly referenced the assembly and wiring of "RJ Table Control." Elder, Multiject, and RSW used Design 3 — both the software code and the technical drawings — in the assembly and wiring of new control systems. RSW did not make any changes in the design when it used Design 3. RSW claims that it did not know Rogers and RJ Control had separately designed Design 3 and did not know there was dispute as to whether Elder properly paid Rogers for that work; that is to say, RSW believed Multiject had permission to build the control systems using the software and technical drawings.
>
> On February 17, 2016 — nearly two years after Rogers initially supplied the software code and technical drawings to Elder — Rogers obtained two Copyright Certificates of Registration: one for the "Control System Turn Table Software: Design 3" (i.e., the software code) and another for "Control System Turn Table Schematics: Design 3" (i.e., the technical drawings).
>
> Nearly two weeks after receiving those copyrights, RJ Control brought suit against Multiject, Elder, and RSW. Over a year later, RJ Control filed an amended complaint, adding Rogers as a plaintiff. That amended complaint brought several federal and state law claims: (1) copyright infringement, (2) trademark infringement, (3) violation of the Michigan Consumer Protection Act, (4) breach of contract, (5) unjust enrichment, (6) conversion, and (7) tortious interference with contract/business expectancy. RSW and Elder/Multiject separately brought motions for summary judgment on all claims. . . . [T]he district court granted Defendants' motions for summary judgment. . . . That same day, the district court entered its final judgment dismissing the case.
>
> That was not, however, the end of the matter. Plaintiffs thereafter filed a motion for reconsideration of the dismissal of the copyright claim . . . . The district court denied that motion on January 18, 2019, but a week later set a hearing on the motion. Nearly two weeks later, the district court vacated its prior denial of the motion. At the hearing on February 11, 2019, the district court expressed interest in seeing the entire software code as it reconsidered its decision, also noting that the court may need an expert in making its determination regarding the software's copyrightability. Plaintiffs thereafter supplied the full code to the court. Ten months later, the district court denied the motion for reconsideration, finding that nothing in the papers supplied to the court — the full source code — revealed that the court erred in its original dismissal of the copyright-infringement claim. The district court provided no further explanation. Plaintiffs then brought this appeal.

*RJ Control Consultants, Inc. v. Multiject, LLC*, 981 F.3d 446, 450-52 (6th Cir. 2020).

The Sixth Circuit affirmed the dismissal of the plaintiffs' infringement claims relating to the technical drawings, after concluding that any "use" of those drawing to produce the control

systems in dispute implicated patent law and could not support any viable claim under the Copyright Act. *Id.* at 456. The court of appeals also noted that the defendants did not dispute the *prima facie* validity of the plaintiff's copyrights in either the software code or technical drawings. *Id.* at 454 ("Because the validity of the copyrights is not contested, we consider the technical drawing and software code copyrights under the second prong. The second prong 'tests whether any copying occurred (a factual matter) and whether the portions of the work copied were entitled to copyright protection (a legal matter).'") (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534 (6th Cir. 2004)).

However, the Sixth Circuit held that the grant of summary judgment on the software copyright claim was improper because the assessment of which portions of the code comprised creative expressions protected by copyright necessarily would entail a "line by line" analysis of the code, and at least one of the two applicable rules of decision for that analysis (the doctrine of "*scenes a faire*") would require the taking of expert evidence to inform the Court about what idioms in the code might be standard passages used as a matter of course in the development of similar software in the industry, and which might have been constructed through more creative choices by the software designer. The court of appeals found that it was error for the district court to render a wholesale ruling on the protectability of the software code without enlisting or permitting the development of expert testimony — or, for that matter, any other discovery on the question of protectability. As the panel explained:

> In considering these two doctrines, the assistance of an expert is desirable, if not required. Similarly, we are unable to undertake any analysis under the *scenes a faire* doctrine without any expert testimony — much less without any briefing or argument — regarding standard industry practices regarding control systems and the relevant software. The district court here noted as much but nonetheless denied the motion for reconsideration before any such expert was hired or appointed. The technology here is complex, as are the questions necessary to establish whether that technology is properly protected under the Copyright Act. Which aspects or lines

> of the software code are functional? Which are expressive? Which are commonplace or standard in the industry? Which elements, if any, are inextricably intertwined? Without any record evidence — whether expert or not — to answer these material questions, there indeed remains a genuine factual dispute. Accordingly, we reverse the district court's grant of summary judgment as to the copyright-infringement claim regarding the software copyright, Copyright Registration Number TXu 1-978-284, and remand the matter to the district court for the taking of additional evidence.

*RJ Control*, 981 F.3d at 458-59 (citations omitted).

On January 21, 2021, after the case was remanded, the Court held a status conference with counsel for the parties. During the conference, the parties indicated that they would need some time to pursue the discovery relating to software code protectability that previously had been denied, and that the facts developed during that process might support further dispositive motion practice. The next day, the Court issued a supplemental scheduling order that established deadlines for expert disclosures under Federal Rule of Civil Procedure 26(a)(2) and for filing any dispositive motions and motions challenging experts. After adjudication of discovery motions and a failed mediation, the Court extended certain discovery and dispositive motion deadlines, but it did not alter the deadline for the disclosure of expert witness reports under Federal Rule of Civil Procedure 26(a)(2).

On July 14, 2021, defendants Multiject and Elder filed a motion to disqualify the plaintiffs' expert witness on the ground that no expert report was disclosed by the deadline set by the Court, and the defendants severally filed their second motions for summary judgment on the ground that the plaintiffs had not produced sufficient evidence to identify discrete portions of the software code subject to copyright protection. After holding a hearing, the Court granted those motions and dismissed the case on January 18, 2022.

The plaintiffs appealed the dismissal, and on April 5, 2023, the court of appeals issued an opinion dismissing the appeal for want of jurisdiction, after it concluded that the January 2022

ruling by the Court was not "final" for the purposes of appeal, because it did not address the defendants' state law counterclaims. Following responses by the parties to the Court's show cause order, the Court dismissed the counterclaim without prejudice, which were based on state law, and again entered judgment dismissing the case in its entirety. The plaintiffs again appealed the dismissal, and the appeal remains pending.

The defendants each filed their attorney's fee motions on June 19, 2023. Defendant RSW seeks a total award of $124,411 on total billings of 541.3 hours. Defendants Multiject, LLC and Jack Elder request an award of $194,846, but they did not identify their total hours worked. At oral argument on November 28, 2023, the Court directed defendants' counsel to submit a supplemental brief with the relevant totals, which was filed on November 30, 2023. The supplement shows that a total of 839.35 hours were billed.

II.

The defendants move for an award of fees incurred in the defense of both the Lanham Act and Copyright Act claims. First, they argue that under the Lanham Act the case qualifies as the "exceptional" sort in which fee shifting to a defendant is allowed, mainly on the ground that the plaintiffs asserted a theory of recovery that was so befuddling that Judge Cohn in his opinion expressed his thinly veiled view that the claim was nonsensical, concluding that no set of facts had been presented that possibly could support a recovery for trademark violations, mainly because the plaintiff never had identified any mark of its own that allegedly was infringed. Second, they contend that the applicable factors under the Copyright Act favor fee shifting.

The plaintiffs respond with a number of quixotic positions, including an argument that the Court should unwind the entire litigation and revisit almost every substantive ruling that has been rendered to date. They further argue that, based on the reasoning of the recent ruling by the Sixth

Circuit that it lacked jurisdiction to hear an appeal from the January 2022 dismissal ruling, the court of appeals also necessarily was without jurisdiction to issue its November 2020 ruling that reversed in part and remanded the case to the district court for further consideration of the software copyright claim. The plaintiffs contend that the court of appeals's 2020 ruling is a legal nullity and that its announcement of the "novel" rule that it applied requiring expert testimony to establish a claim for infringement of software code therefore was not a valid ground for this Court's subsequent summary judgment ruling. The plaintiffs also argue that if any award of fees is granted, then it should include only fees incurred by the defendants after the Sixth Circuit's November 2020 announcement of the "new rule" for substantiation of a software copyright claim requiring expert testimony to support such a claim. Finally, although the plaintiffs do not dispute the defendants' billing claims in detail, they criticize the defendants for making no effort to segregate the billings related to the copyright claims only, as opposed to the trademark claims which were dismissed earlier in the litigation.

As noted earlier, the defendants seek attorney's fees under both the Lanham Act and the Copyright Act. The criteria for fee shifting are not the same under those statutes when defendants ask for a fee award against a plaintiff. The Court will address those statutes separately before discussing the amounts claimed.

A.

"Where a plaintiff fails to establish a claim for trademark or trade dress infringement under the Lanham Act, a court may award attorney's fees to the defendant in 'exceptional cases.'" *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 516 (6th Cir. 2023) (quoting 15 U.S.C. § 1117(a)). "An 'exceptional' case is 'one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the

facts of the case) or the unreasonable manner in which the case was litigated.'" *Ibid.* (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "In particular, 'exceptionally meritless claims' or claims brought in 'bad faith' warrant an award of attorney's fees." *Ibid.* (quoting *Octane Fitness*, 572 U.S. at 555). Fees generally are awarded against a plaintiff under the Lanham Act "only in rare circumstances" after the court considers "the totality of the circumstances." *Ibid.* (citing *Octane Fitness*, 572 U.S. at 554-55; *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 235 (6th Cir. 2019)). That means that a prevailing defendant is not entitled to attorney's fees under section 1117(a) as a matter of course. *Ibid.* (quoting *Eagles, Ltd. v. Am. Eagle Found.*, 356 F.3d 724, 728 (6th Cir. 2004)). Instead, the defendant must demonstrate that the case is "exceptional."

In his opinion granting summary judgment against the plaintiffs on their Lanham Act claim, Judge Cohn concluded that the claim was wholly without merit because the plaintiffs had failed in the first instance to identify any trademark held by them that had been infringed. He wrote:

> To establish a claim under the act, RJ Control and Rogers first must establish the existence of a valid and legally protectable trademark qualifying under § 2 of the Lanham Act. In their response brief, RJ Control and Rogers contend that defendants infringed their "trademark" by "falsely representing the origin of the injection mold machines, which is likely to cause confusion regarding whether Plaintiffs authorized, approved or sponsored Defendants' use of Plaintiff's Copyright information." This allegation is not understood. RJ Control and Rogers have not identified what the trademark is that has been infringed much less what confusion has occurred. Multiject makes the injection mold machines. The control system is a component part. The injection mold machines bear Multiject's name. RSW made the control systems for Multiject which was then incorporated into the injection mold machine. There are simply no facts which would establish a Lanham Act violation. Summary judgment is appropriate.

*RJ Control Consultants, Inc. v. Mutltiject, LLC*, No. 16-10728, 2018 WL 5840736, at *5 (E.D. Mich. Nov. 8, 2018), *aff'd in part and rev'd in part*, 981 F.3d 446 (6th Cir. 2020).

Judge Cohn's professed inability to make heads or tails of the plaintiffs' claim is understandable, since the existence of a protected mark is a fundamental prerequisite of any viable claim under the Lanham Act. "A trademark is 'any word, name, symbol, or device, or any combination thereof . . . [used] to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Bliss Collection*, 82 F.4th at 506 (quoting 15 U.S.C. § 1127). "To establish a claim for trademark infringement for a registered trademark, a plaintiff must show that: (1) it owns the registered trademark, (2) the defendant used the trademark in commerce, and (3) the use was likely to cause confusion." *Ibid.* (citing 15 U.S.C. § 1114(1); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)). Unregistered trademarks do not enjoy the same presumption of validity as registered marks, but they still may receive protection under section 43(a) of the Lanham Act if the plaintiff demonstrates "continuous commercial utilization." *Ibid.* (citing *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012); *Tumblebus v. Cranmer*, 399 F.3d 754, 760-61 (6th Cir. 2005); *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 358 (6th Cir. 1998)). However, the plaintiffs never have pleaded or substantiated any facts to demonstrate their ownership of any trademark as that term is defined by the Lanham Act, nor have they ever put forth allegations or proofs to establish either registration of such a mark or continuous commercial use of any unregistered mark.

The plaintiffs' theory of the case apparently was that by making and selling control systems manufactured by Multiject and affixed with Multiject's own brand, the defendants somehow induced "confusion" about the origin of those systems, by failing also to affix to the control systems an unspecified, nonexistent brand mark associated with the plaintiffs. The plaintiffs have not cited any legal authority endorsing such an odd theory of recovery under trademark law, and

their theory of the case parses as little more than a fundamental misapprehension of the law. Nor was this the only instance in this litigation in which a plainly hollow legal theory was advanced by the plaintiffs to sustain their claims. The Sixth Circuit observed in its opinion affirming the dismissal of the copyright claims relating to technical drawings that the plaintiffs' claims based on the "use" of their technical drawings plainly sounded in patent law, not copyright law. *RJ Control*, 981 F.3d at 454-55. Although lack of success in itself may not render this case "exceptional," the repeated advancement of defunct legal theories, along with the total failure to plead or sustain a bedrock element of the trademark claim, certainly sets it apart from the mine run of trademark cases involving at least minimally plausible causes of action. That places the suit in the "exceptional" category where fee shifting is justified.

B.

Unlike the Lanham Act, the Copyright Act allows the district court to "award costs, including reasonable attorneys' fees, to the prevailing party," including against an unsuccessful plaintiff, as a matter of course. *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citing 17 U.S.C. § 505). "This discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act." *Ibid.* (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). "The grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely.'" *Ibid.* (quoting *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 380 (5th Cir. 2004); citing *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007)).

In *Bridgeport Music*, the court of appeals pointed out that the Supreme Court has rejected "both a 'dual standard' under which a prevailing defendant is required to show frivolousness or

bad faith and the 'British Rule' of automatic recovery of attorneys' fees and costs by the prevailing party." *Ibid.* (quoting *Fogerty*, 510 U.S. at 534). There is no prescribed formula for deciding when fees are awarded. Instead, courts must weigh several factors, "including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Ibid.* (quoting *Fogerty*, 510 U.S. at 534 n.19). "The factors need not all weigh in favor of an award in order to grant fees to a prevailing party and other factors may be considered." *Ibid.* (citing *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 894 (6th Cir. 2004)). However, "it generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 628 (6th Cir. 2004).

Here, the defendants certainly "prevailed" when they succeeded in having all of the copyright claims dismissed finally on summary judgment. "[W]hen a defendant succeeds in having summary judgment entered in its favor on the copyright infringement claims asserted against it, that defendant can only be described as having 'prevailed.'" *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 893 (6th Cir. 2004). And although the award of fees and costs is not by rote, the balance of factors favors the award of costs and attorney's fees to the defendants.

The first factor does not favor the defendants, since the theory of recovery at least for the software copyright claim was not so devoid of legal or factual merit as to be deemed frivolous. That is demonstrated by the Sixth Circuit's analysis, which led it to remand the software copyright claim to this Court for further discovery and a decision on the merits.

The second and third factors overlap and favor the defendants in a related way. The litigation of the software copyright claim was not objectively unreasonable in a legal sense —

again, as demonstrated by the fact that the court of appeals found that the claim had enough merit to warrant discovery and a disposition on the merits. However, the plaintiffs' handling of the factual development of the claim was both objectively unreasonable and plausibly could be viewed as motivated merely by a desire to prolong and increase the expense of the litigation. That is demonstrated by the fact that, after seven years of litigation, the plaintiffs utterly failed to produce a shred of substantial evidence to establish protectability of a single line of their software code. Moreover, as the Court previously observed, the plaintiffs' attempts to avoid the consequences of the total evidentiary failure of their case were illogical and implausible in the context of the case. As the Court explained, the plaintiffs "assert[ed] that they misunderstood the Court's scheduling directives and assumed that expert reports did not need to be produced until 90 days before trial, the default deadline specified by Federal Rule of Civil Procedure 26(a)(2)(D)(i)," but "[t]hat explanation [was] not plausible and is not based on a reasonable interpretation of either the rule or the orders of the Court." *RJ Control Consultants, Inc. v. Multiject, LLC*, 2022 WL 163614, at *7 (E.D. Mich. Jan. 18, 2022). Moreover,

> the plaintiffs' gloss on the scheduling order is illogical when considered in the context of the post-remand litigation. When the Court first met with the parties after remand for a Rule 16 conference, plaintiffs' counsel stated that they wanted to engage in the discovery that had been precluded earlier and then file additional dispositive motions. The defendants also sought to file dispositive motions. The court of appeals had emphasized the importance of expert testimony for evaluating the protectability of the software code. *RJ Control Consultants*, 981 F.3d at 458 ("In considering these two doctrines [merger and *scenes a faire*], the assistance of an expert is desirable, if not required. Similarly, we are unable to undertake any analysis under the *scenes a faire* doctrine without any expert testimony."). As the court of appeals observed, "[t]he technology here is complex, as are the questions necessary to establish whether that technology is properly protected under the Copyright Act." *Ibid.* Any meaningful further motion practice would be impossible without supplementing the record with expert reports and, likely, depositions. Holding off on the disclosure of expert opinions until 90 days before an unscheduled trial date, as the plaintiffs say they interpreted the scheduling order, simply makes no sense.

*RJ Control Consultants, Inc.*, 2022 WL 163614, at *7. The plaintiffs also attempted to interpose a frivolous argument that their failure to produce an expert report was "justified" because the defendants resisted the production of a copy of the software source code; conveniently overlooking the fact that the plaintiffs already possessed the entire source code, having created it themselves in the first instance. *See id.* at *8.

Taken in isolation and outside the context of this long-running litigation, discovery disputes and delays by themselves might be viewed simply as inherent to the usual hurly-burly of complex civil litigation. However, viewed holistically along with other aspects of the plaintiffs' conduct throughout the litigation, the plaintiffs' total failure to produce any evidence to support their case, and their remarkably feeble attempts to defend that failing, track a common theme with the above examples of their repeated advancement of plainly frivolous positions, e.g., relating to the doomed trademark claim. Against that background, the plaintiffs' deliberate efforts to extend the lifespan of this litigation, culminating with their complete failure to produce any substantial evidence to sustain the software copyright claim, reasonably may be viewed as both objectively unreasonable and as proof of a bad faith motivation in pursuing the litigation.

The plaintiffs insist that they were blindsided by the "new rule" announced by the Sixth Circuit requiring them to produce expert testimony to inform the application of the principle of *scenes a faire* to segregate expressive from functional portions of their source code. But the Sixth Circuit never announced a "new rule." Instead, it simply held that expert explanation was required to develop the technical facts in this case. The plaintiffs made no effort to meet that challenge. Instead, as they did in previous filings, they again point to a declaration by Paul Rogers, which they insist was sufficient to sustain their case on the element of protectability. However, as the Court observed in its previous opinion, even accepting that attestation at face value, it failed to

"identify a single distinct line of the software code that comprises protectible creative expression." *RJ Control Consultants, Inc.*, 2022 WL 163614, at *11; *see also RJ Control Consultants*, 981 F.3d at 457-58 ("Distinguishing between those ideas and expression in the context of software code requires a line-by-line understanding of the code, including what specific lines in that code are purely functional and whether those unprotectible lines are intertwined with any expressive lines.") (citing *Lexmark Int'l*, 387 F.3d at 535; *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 (6th Cir. 2004)). Even considering the declaration by Rogers setting forth his own views about the protectability of his code, the Court still was left with no evidentiary basis to discern protectable from unprotected discrete portions of the writing.

In their opposition to the present motions, rather than engaging squarely with the applicable rules of decision, the plaintiffs instead attempt to defend their previously rejected position with outlandish arguments such as their contention that the court of appeals "lacked jurisdiction" to decide the interlocutory appeal (on which they prevailed), and that years of litigation must be unwound entirely and their case given a "do over" from the start due to that supposed jurisdictional defect. They have not cited any legal authority supporting the claim of a jurisdictional defect.

"[A] party's litigation tactics may weigh in favor of an award of fees when the conduct supports an inference concerning motivation or a particular need for deterrence." *Rhyme Syndicate Music*, 376 F.3d at 628. In addition to demonstrating factual unreasonableness, the fact that the plaintiffs repeatedly have advanced legal arguments with no colorable merit, and that when put to the test they proved unable to produce a shred of evidence to sustain the central element of their software copyright claim, all weigh in favor of an award of fees under the Copyright Act to deter repetition of such wasteful litigation.

C.

What's left is to determine the amount of attorney's fees that the defendants should recover under the two statutes. Of course, the defendants are entitled only to one recovery.

Typically, the reasonableness of an attorney's fee request is measured by the lodestar method. *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed." *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999). If "documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433 (1983). Additionally, the Court must "exclude . . . hours that were not reasonably expended." *Id.* at 434. A reasonable rate for the purpose of the lodestar calculation is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)). Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Id.* at 716 (internal quotation omitted).

If a prevailing party provides "particularized" billing records in support of its fee request, then "conclusory allegations that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." *Imwalle v. Reliance Med. Prod.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough

justice, not to achieve auditing perfection."). All that is required is that the records demonstrate "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 553; *see also Hensley*, 461 U.S. at 433, 437 (1983).

The plaintiffs do not challenge either the number of hours billed or the hourly rates claimed by the defendants in either of their motions. Instead, they merely raise the strange argument that the billing should be restricted to only those fees incurred after the purportedly "novel" rule of law regarding the standard of proof was "announced" by the Sixth Circuit in its 2020 ruling. However, as noted earlier, the court of appeals announced no new rule of law or standard of proof. It cited decades old authority for the proposition that application of the doctrine of *scenes a faire* must be informed by expert testimony about coding idioms in the specific software domain in question. *RJ Control Consultants*, 981 F.3d at 458 ("[W]e are unable to undertake any analysis under the *scenes a faire* doctrine without any expert testimony — much less without any briefing or argument — regarding standard industry practices regarding control systems and the relevant software. *Kohus v. Mariol*, 328 F.3d 848, 857-58 (6th Cir. 2003) (remanding where the 'inquiry [into copyrightability] will almost certainly require expert testimony, because the drawings are technical in nature')."); *see also Kohus*, 328 F.3d at 857-58 (6th Cir. 2003) ("The first prong of the [*scenes a faire*] inquiry will almost certainly require expert testimony, because the drawings are technical in nature and a lay person is unlikely to understand what constitutes creativity in this area, which elements are standard for the industry, and which elements are dictated by efficiency or by external standards."). The plaintiffs' argument that the 2020 ruling by the court of appeals worked a "sea change" in the corpus of copyright law by which they were blindsided is frivolous.

Turning to the defendants' fee requests, both are supported by lengthy detailed billing records demonstrating the reasonableness of the hours expended and the hourly rates claimed by the defendants' counsel. Defendant RSW seeks a total award of $124,411 for total billings of 541.3 hours of work on the case. That works out to an average rate of $229 per hour. That is well below the median hourly rate of $368 indicated in the State Bar of Michigan's survey of prevailing hourly rates as the median rate charged by practitioners of intellectual property law. *See* State Bar of Michigan, Economics of Law Practice 2020, ECF No. 122-2, PageID.4521.

Defendants Multiject, LLC and Jack Elder request an award of $194,846; however, although they submitted extensive itemized billing records, the motion and supporting materials do not anywhere indicate a total number of attorney hours logged on the case. There is nothing remarkable about the total billing amount or the tabulated hourly rates between $125 and $250 per hour in the context of a seven-year trademark and copyright suit. But because it was impossible to compute a lodestar amount without a statement of the total number of hours of work claimed, the Court ordered them to file a supplement, which they did. The supplement shows that a total of 839.35 hours were billed on the file at rates ranging from $75 per hour for a legal assistant to $250 per hour for lead counsel. The blended hourly rate based on the plaintiff's total figures works out to $232 per hour. Those rates fall comfortably within the range of market rates charged for legal services in Michigan during the relevant time period.

This case was litigated extensively over a period of seven years, including multiple rounds of dispositive motion practice and two appeals, with a third still pending. At the final hour, when called upon to prove up their case, the plaintiffs came up empty, effectively walking away from the litigation when they failed or refused to furnish the expert testimony that the court of appeals warned was vital to their success. It would be reasonable to conclude based on all of the

circumstances that this entire suit has been nothing more than an extravagant waste of the Court's and the defendants' time and resources. The need to deter such wasteful litigation weighs heavily in favor of shifting the entire — and entirely reasonable — cost of the litigation to the parties that instigated it.

### III.

The plaintiffs' objections to fee shifting in this case are without merit, and they have not challenged either the amount of hours claimed or the hourly rates requested by the defendants, which are reasonable in the context of this lengthy litigation.

Accordingly, it is **ORDERED** that the defendants' motions for attorney's fees (ECF Nos. 121, 122) are **GRANTED**.

It is further **ORDERED** that defendant RSW Technologies, LLC shall recover from the plaintiffs attorney's fees in the amount of $124,411.

It is further **ORDERED** that defendant Multiject, LLC and Jack Elder shall recover from the plaintiffs attorney's fees in the amount of $194,846.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: January 16, 2024